May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of Petitioner Zoya Gasparyan, who fled her native Armenia after a quarter century of horrific abuse at the hands of her sadistic husband. Although an immigration judge determined that she has a clear probability, faces a clear probability of persecution if returned to Armenia, and a clear probability of torture, the immigration judge denied her application for asylum, finding that it was untimely. Normally an application for asylum has to be submitted within a year of one's arrival, but there are exceptions. One of those is where extraordinary circumstances are presented that directly relate to the failure to file in a timely way. In this case, the immigration judge determined that there were not extraordinary circumstances. Ms. Gasparyan, she appealed, and the Board upheld that determination, but in upholding it, the Board didn't even reference the three-part test that's set forth in the regulations. The Board, in its decision, it concedes that there's a mental impairment here, and the regulations make serious mental disabilities, specifically they describe those as being extraordinary circumstances. But the Board didn't go on to consider any of the three factors set forth in the regulations. Did the Board say that she did or didn't have a serious mental disability? No, Your Honor. It didn't address that question either. I mean, it seems to me that the regulatory framework. But it did make a finding that the primary reasons for not applying were a lack of funds and her inability to speak English. It did suggest that, Your Honor. But again, it's not – It suggested it, said it. Okay. Well, I'll accept that, Your Honor. But even if that's the case, it's devoid of any legal architecture. I mean, it seems to me the threshold question here, according to the regulations, is, is there a serious mental disability? The Board didn't ask – didn't even address that question. After you address that question, the next thing, according to the – Well, once it's found that the principal reasons were lack of funds and an inability to speak English, what's the problem? It has noted that she did have some mental problems. It's found that those were probably not sufficient here. And to the extent that we disagree with the Board, we're not going to have jurisdiction. Well, no, Your Honor. The test that's set forth in the regulations is – the first question is, did she cause the circumstance? That's clear she didn't. The second question, the pivotal question is here, is, is the – is the mental disability directly related to her failure to file? That's the question. It's not a question of whether – what's the primary reason. It's a question of, is there a serious mental disability? And is – was that mental disability directly related to her failure to file? Suppose she waited five years. Pardon me, Your Honor? Suppose she waited five years because of mental – suppose she waited six years. I gather you think if the Court gives the reason and he doesn't mention the mental disability, we have to reverse. No, not at all. Because the third part of the test, Your Honor, is whether the delay was reasonable under all the circumstances. The Board didn't address that factor either. I mean, there's a three-part test. The regulations specifically define what is an extraordinary circumstance. Why isn't that implicit in the Board's finding that she – that she told – that she said, well, one of the reasons I didn't do this is because I was living with my husband's brother and I was afraid that he was going to call Sargis and tell him what was going on. And the Board says, oh, wait a minute. That's not an adequate excuse. You didn't even start living with them until August. Right. Well, let me go back. Let's start with Judge Wallace's point. The Board does say that, you know, according to one of the witnesses' testimony, a witness indicated that her primary reasons for not applying for asylum were lack of funds and an inability to speak English. Well, if you look at the – at the regulatory framework, those are relevant. Those are relevant, for example, to the third factor, the one that you're pointing to, Your Honor, about unreasonable delay. But they don't cut against the applicant in this case. They count in her favor if you're applying the regulatory framework. But here, because the reasonableness of delay, well, you would have to take into account, did she have any money? Was she able to speak the language? All those things should be cutting in her favor according to the framework. But here, because there's no – there's no – the Board isn't applying any framework. Why would those cut in her favor? Because it goes to the reasonableness of the delay. Right. But if she didn't speak any English whatsoever, and that was the only excuse for doing this, I can't imagine the Board saying, well, those are extraordinary circumstances. You came to the United States and you don't speak English. They probably would not, Your Honor. But again, the whole problem with my – the Board's approach to this case is that it's devoid of any legal framework. The regulations specify the framework. They specify the three factors that are to be considered. Here, the Board is throwing out a bunch of things without connecting them to any of the three factors. And my point is that these – the things that they say are the primary reasons, they're relevant to the analysis, but they're not relevant in the way that the Board suggests that they're relevant. If anything, they go to the delay, and again, our position would be the lack of funds. The fact that she came here with $350 in her pocket. The fact that she didn't speak the language. The fact that, you know, she was insulated. All those things actually make the delay more reasonable rather than less reasonable. But because the Board isn't actually applying the three-part test, it's just – you know, it doesn't even mention the regulation, let alone apply any of the three factors. It's treating those as a negative when under the three-part test, those should really be considered as a positive. If there's a factual determination involved here, I take it we don't have jurisdiction. Yeah. And honestly, I think our strongest position, Your Honor, is that there's pure legal error here. I'm not asking the Court to rule that there are extraordinary circumstances here. I think that probably is beyond your authority. But clearly, the Court is in a position to order the Board to apply the regulatory  test. And what bothers me here, again, is that the analysis here is – it's unmoored to any law. And the law is set forth directly in the regulations, and the Board has an obligation to examine those three factors. The starting point is – the Board's analysis should be, was there a serious legal disability here? Didn't address that question. Second question, did she cause the circumstances? Didn't address that question. Third question, is the mental disability directly related to her failure to file in a timely fashion? Didn't address that question. And your point, Your Honor, about the reasonableness of the delay, it didn't address that question either. Even though that factor, as you suggest it should be, is specifically set forth in the regulations as one of the factors to be considered. The Board completely ignored the three-part test. And it makes it difficult for this Court to review the Board's decision because you don't know how any of these factors that it's throwing out relate to the three-part test. It's just a hodgepodge. And without an analytical framework, I really don't see how you're in a position to review the Board's analysis. That's the problem, I guess. If it's a factual determination, we don't have power to review. So it's irrelevant. How do we get over the problem that this is obviously a factual determination over which we don't have any jurisdiction? Well, there are factual determinations to be made, Your Honor, and linked to the various factors in the regulatory framework. The problem here is the Board isn't linking any of the factors that it's offering here. Do you have any case in which we have said to the Board, be didactic, cite the regs, or go home? No, Your Honor. But obviously, when you have a ---- I think we'd be cutting new law on that front to tell the Board, if you don't cite the regs, you've done it wrong. But when the regulations, Your Honor, specifically discuss serious mental disability and they specifically make that a possible excuse for a long time ---- I mean, the Board agrees that she's got a stress disorder. Right. It doesn't dispute that. Exactly. But then the rest of the analysis should be, Your Honor, did she meet her burden of proof on the three points that the regulations require her to meet her burden of proof on? And the Board didn't address any of those three points. I mean, again, if there were no regulatory scheme and the question were simply, is this an extraordinary circumstance, yeah, I'd have a hard time coming in here and arguing this. But that's not the situation. This Court is obligated to make the Board follow the law or at least apply the law. And in this particular case, they didn't apply the test. And without applying the test that's set forth in the regulations, you're sort of at sea in terms of determining whether or not the Board violated the law or not, whether its analysis is arbitrary, capricious. I mean, you have no way of judging it. I'll reserve the balance of my time. Okay. Thank you, Mr. Joe. Mr. Moss. Thank you, Your Honor. May it please the Court, my name is Benjamin Mark Moss, counsel for the Respondent. The Attorney General of the United States. The core of this case is a material factual dispute about why Ms. Gasparian waited 15 months to apply for asylum after the one-year delay had already occurred. And my friend already concedes that the Board found that the primary reason for the delay was money and language issues. But he tries to put the cart before the horse. The Board only has to reach issues that are relevant. And the statute says you have to show extraordinary circumstances. She didn't show extraordinary circumstances. What she showed were ordinary circumstances. And so the Board didn't have to reach the question of the three-part test that Ms. Gasparian believes the Board should have applied. It's kind of like in the context of the Board doesn't so your contention is the Board didn't have to use the three-part test or is your contention that the Board implicitly followed the three-part test? Our primary contention is that the Board did not need to reach the question of whether the three-part test applied, having already concluded that there were no extraordinary circumstances. But isn't the test how the Board judges? Isn't the conclusion at the end of the application of the three-part test that there are or are not extraordinary circumstances present? No, Your Honor. Those are attendant necessary but not sufficient circumstances that have to come along. As a second question, after the Board first concludes whether or not there are extraordinary circumstances, reading the language of the regulation, it doesn't talk about what extraordinary circumstances are in that section of the reg. Instead, what it talks about are circumstances relating to diligence and other related factors that you have to show having already shown extraordinary circumstances. Let me just go through those three parts of the test. One is whether the extraordinary circumstances, assuming they were to exist, whether they were of the alien's making. That doesn't say whether they were extraordinary. That just says whether they were of the alien's making. The second factor, and I may be going out of order, but a second factor in any event, is whether the extraordinary circumstances were a causal factor in the delay. So if there were a blizzard, that might be extraordinary circumstances, but if it didn't cause a delay, it wouldn't work. And so then there's the third factor, which relates to diligence. And none of those factors. Your point is that those three things all follow findings of fact that have to be made by the I.J. and the Board first. And then, so it's simply an application to facts that have previously been found, and the Board has already found the facts elsewhere. That is the government's position. And because the Board's determination was based on disputed facts, the Court does lack jurisdiction, and the regulatory argument is not a colorable question. So in that instance, the Court should dismiss the petition, or to the extent it did have jurisdiction, the Board's finding is supported by substantial evidence. I mean, here it did weigh a number of different factors of the four different proposed reasons for why the delay. It was disputed. Why the delay? Was it mental health issues? Was it social isolation? Was it money? Was it language issues? And here Ms. Gasparian's own expert spoke to this issue at page 172 of the record. He said, you know, really, essentially, it was money and language. And she said the same thing. There's more substantial evidence, another independent basis. When she was asked, did you talk to an attorney about your immigration matters that you were so acutely aware of? Recall that she had talked about getting money from her sister to find an attorney. When she was asked about, did you talk to an attorney, she said, really, it was money. It was money. Well, I don't quite understand your argument at this part. Why is it necessary? We take substantial evidence. We use a substantial evidence test to review findings. As I understand it, if there are factual findings, we don't have any jurisdiction to go into it at all. I agree, Your Honor. It's an alternative argument. In the case of the Court, we're to find jurisdiction. But the government's primary contention is that there is no jurisdiction because this is just a weighing of the facts. I understand your argument. I understand the argument on both sides. And they're both very persuasive. So I'm just kind of surprised that there's no citation of cases. Hasn't somebody decided this someplace in one of the circuits? It seems to me it would come up all the time. I looked in the same question before the argument, Your Honor. I checked in the 2nd and the 11th and the 7th, 2nd and 11th, for instance. I didn't see any authority that addressed that particular issue. This Court, as we mentioned in our 28-J letter, has had some unpublished cases that say that when there's a factual dispute underlying the reason for the delay, then the Court does lack jurisdiction. But so far, nothing published that I've seen. And it sounds like that there's a need for publication because both sides have very persuasive arguments. The government agrees that there's a need for publication, although it respectfully disagrees. Yes, I understand. Does the Court have any further questions that I could provide any clarity on? I don't think so. Thank you, Your Honor. We respectfully request that the Court dismiss the petition for lack of jurisdiction. Thank you, Mr. Moss. Mr. Jobe, you have time remaining. The regulatory scheme, Your Honor, doesn't require that the extraordinary circumstance be a but-for cause. It only requires that the mental disability be directly related. And it seems like the Board's analysis here is considering whether this was a but-for cause, and we know that that's an inappropriate analysis because if you look at the other circumstances that are set forth here in the regulation, one of them, for example, is the regulations say it's an extraordinary circumstance if the applicant had TPS status or any legal status here in the United States. You know what the problem is? As I listen to you argue, Mr. Jobe, if there's a factual dispute, we lack jurisdiction. Right. And I think you're suggesting that there may be a factual dispute. Not at all. I'm simply suggesting, Your Honor, that the appropriate analysis here is the one set forth in the regulations. The Board seems to be applying, asking. But that, of course, the regulations don't tell the Board what circumstances to consider. It just says the circumstances, meaning there's already been some kind of an interior findings by the Board. And to the extent that what you're arguing is that the Board should have considered or should have weighed it differently, those are findings of fact. But I'm not even arguing that, Your Honor. I'm simply arguing that the regulations specifically say that a serious mental disability can be an extraordinary circumstance. That raises the question, A, is this a serious mental disability? Once you get to that point, the only analysis left to be done is a three-part test. If it's a serious mental disability, the next question is, did she cause it herself? No. Next question is, is it directly related to her failure to file? The expert testified that the trauma that she had experienced caused her, as a survival strategy, to become passive. But what did she say? She basically said the same thing, Your Honor. She said that during She didn't have the money. That is a factor. And she had a language problem. Those are things that she also said, Your Honor. But she also testified during her term. But doesn't that go to our understanding of how serious the mental disability was? It does, Your Honor. And once we do that, then there's no jurisdiction. No, Your Honor. This is a court of appeals, Your Honor. You're not here to apply the three-part test in the first instance. You're not here to decide in the first instance whether this is a serious mental disability. Those are things that the Board was supposed to do. But in effect, hasn't the Board said it's not a sufficiently serious mental disability that we should proceed any further here? No. They determined that this is not an extraordinary circumstance, but they did so without answering whether it's a serious mental disability or applying any of the other three factors. And all I'm saying is that before you can make a determination that's reviewable in a court of appeals about whether something is an extraordinary circumstance, you've got to follow the test. And they didn't do that here. They completely ignored it. They didn't even cite the regulation, let alone apply the three-part test. Okay. Thank you. The case was well argued, and we appreciate the arguments of counsel. And Gasparian is submitted.
judges: Wallace, Farris, Bybee